ON REMAND FROM THE ALABAMA SUPREME COURT
The appellant, Larry Donald George, was convicted of two counts of capital murder, under § 13A-5-40(a)(10), Ala. Code 1975, because two people were killed as the result of one course of conduct, and under § 13A-5-40(a)(4), Ala. Code 1975, because the murders occurred during the course of a burglary. The appellant was also convicted of attempted murder, under §13A-4-2 and § 13A6-2, Ala. Code 1975. We affirmed the appellant's convictions by an opinion issued on April 19, 1996, but remanded the case with instructions that the trial court hold a new penalty phase hearing and re-evaluate its imposition of a sentence of death. George v. State, 717 So.2d 827
(Ala.Cr.App. 1996). The Supreme Court of Alabama, in George v.State, 717 So.2d 844 (Ala. 1996), reversed this Court's judgment and remanded with instructions that the sentence of death be reinstated. The Supreme Court held that the trial court properly admitted video evidence of the appellant's living conditions in the woods. George, 717 So.2d at 847.
Because we have fully addressed the issues raised by the appellant regarding the guilt phase of his trial in George v.State, we now address the remaining issues the appellant raises regarding the penalty phase of the trial.
 I
The appellant argues that the trial court coerced the jury into reaching a guilty *Page 851 
verdict. This issue was not preserved for review on appeal. However, because this case involves the death penalty, this Court is obliged to apply the plain error rule.
 "In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant."
Rule 45A, Ala.R.App.P.
 "The Alabama Supreme Court has adopted federal case law defining plain error, holding that ' "[P]lain error" only arises if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings,' Ex parte Womack, 435 So.2d 766, 769 (Ala.), cert. denied, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983) (quoting United States v. Chaney, 662 F.2d 1148, 1152 (5th Cir. 1981))."
Haney v. State, 603 So.2d 368, 392 (Ala.Cr.App. 1991), aff'd,603 So.2d 412 (Ala. 1992), cert. denied, 507 U.S. 925,113 S.Ct. 1297, 122 L.Ed.2d 687 (1993). To find plain error, an appellate court must find that "the claimed error not only seriously affected 'substantial rights,' but that it had an unfair prejudicial impact on the jury's deliberations." UnitedStates v. Young, 470 U.S. 1, 16-17 n. 14, 105 S.Ct. 1038, 1047
n. 14, 84 L.Ed.2d 1, 13 n. 14 (1985).
During the penalty phase of the trial, the following occurred:
 "The Court: Do not start deliberating until you have received the verdict forms, which I am going to send back to you, the exhibits, and also you can select another foreperson or continue the same foreperson, whatever you deem appropriate when you get back there.
"(Whereupon, jury out for deliberation.)
 "(Whereupon, the following proceedings were had outside the hearing and presence of the jury. And inside the presence of the Defendant and his counsel, along with counsel for the State.)
 "The Court: Y'all lawyers come up here just a minute, please. Let you look that over. Y'all read that.
 "Mr. Rumsey [prosecutor]: Don't see any way you can deny that. They want to rest tonight.
 "The Court: What I thought I would do is write back in there and ask them if they felt like they could go a reasonable length of time longer. If they say they can, that will probably take care of that. If they say they don't want to, we will do what they request. Is that all right?
"Mr. Rumsey: Yes, sir, anything is fine with me.
"Mr. Giddens [defense counsel]: That's fine.
 "The Court: It is just 9:30. It is not too late. All right. On my request of them is that I would appreciate you deliberating for further reasonable time before we recess for tonight. You have only been deliberating for 50 minutes at this time. Consider this request, and if this is okay, continue deliberating. Is that all right with the State? All right with the Defendant?
"Mr. Giddens: Yes, sir.
"The Court: State?
"Mr. Rumsey: Yes, sir.
"The Court: Okay.
"(Whereupon, jury continued to deliberate.)"
The trial court did not suggest to the jury which way its verdict should be returned. The trial court merely urged the jury to continue its deliberations because the jury had been deliberating for less than an hour.
 "As this court stated in McMorris v. State, 394 So.2d 392 (Ala.Cr.App. 1980), writ denied, 394 So.2d 404 (Ala. 1981), cert. denied, 452 U.S. 972, 101 S.Ct. 3127, 69 L.Ed.2d 983 (1981), 'The general rule in Alabama has been that it is not improper for the trial court to urge upon the jury the duty of attempting to reach an agreement or verdict as long as the judge does not suggest which way the verdict should be returned.' 394 So.2d at 403." *Page 852 
King v. State, 574 So.2d 921, 927-28 (Ala.Cr.App. 1990). " '[A] trial judge may urge a jury to resume deliberations and cultivate a spirit of harmony so as to reach a verdict, as long as the court does not suggest which way the verdict should be returned and no duress or coercion is used.' Showers v. State,407 So.2d 169, 171 (Ala. 1981)." Ex parte Giles,554 So.2d 1089, 1093 (Ala. 1987). See also Miller v. State, 645 So.2d 363
(Ala.Cr.App. 1994).
The trial court did not err suggesting to the jury that it continue its deliberations.
 II
The appellant contends that the State engaged in numerous acts of prosecutorial misconduct during the penalty phase that cumulatively denied him a fair trial. The appellant complains that the State improperly 1) argued nonstatutory aggravating circumstances to the jury, 2) referred to the appellant's flight after the crime, 3) encouraged the jury to consider one victim's injuries when determining its sentencing recommendation, 4) hinted that the jury's recommendation did not matter because the judge would sentence the appellant to death anyway, 5) suggested that capital punishment is this country's means of self-defense, and 6) commented that the purpose of the trial was for vindication of the victim's rights. We note that none of these alleged instances of misconduct were objected to at trial. Thus, any reversal would have to be predicated upon plain error. See, Rule 45A, Ala.R.App.P. " 'Plain error' only arises if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings." Exparte Womack, 435 So.2d 766, 769 (Ala.), cert. denied,464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983) (quoting UnitedStates v. Chaney, 662 F.2d 1148, 1152 (5th Cir. 1981)).
 A
The first allegedly improper remark by the State was made during the opening statement of the penalty phase:
 "Then I think the Judge will charge you that basically what the law says that you weigh. You take this aggravating circumstance or the aggravating circumstances and mitigating circumstances, and it is not a question where you just go up on the board and add them up one, two, three; one, two, three or whatever the case may be. But is actually a weighing of them. You take the facts and circumstances of this case, and you take the defendant's conduct in this case. And then you take those — you take all the facts that we have proved in the guilt stage, and you take the aggravation and you take the mitigation and you weigh to see which one weighs the most. Which one — is it the aggravating that weighs more in the facts of this case or is it the mitigating that weighs more."
(Emphasis added.)
The appellant claims that the remark concerning his conduct is improper because it implied to the jury that, even if the mitigating factors outweigh the statutory aggravating factors, the jury could still recommend a sentence of death by considering nonstatutory factors such as the appellant's conduct.
The State is allowed to rebut any evidence the appellant offers as a mitigating circumstance. Section 13A-5-45(g), Ala. Code 1975 states:
 "The defendant shall be allowed to offer any mitigating circumstance defined in Sections 13A-5-51 and 13A-5-52. When the factual existence of an offered mitigating circumstance is in dispute, the defendant shall have the burden of interjecting the issue, but once it is interjected the state shall have the burden of disproving the factual existence of that circumstance by a preponderance of the evidence."
The appellant argued, as a mitigating factor, that the offense occurred while the appellant was under the influence of extreme mental or emotional disturbance, pursuant to § 13A-5-51(2). To rebut this mitigating circumstance, the State offered evidence of the appellant's conduct of fleeing the state immediately after the offense to show that the appellant was not suffering under the influence of extreme mental or emotional disturbance at the time of the murders. *Page 853 
Ironically, counsel for the appellant commented positively about the State's alleged improper statement.
 "[A]s the defense attorney, we [sic] will present evidence to you of what are called mitigating circumstances. Mr. Rumsey [the prosecutor] explained the law to you and [has] done a very good job with that. I don't have much more to say about that. What he says is a correct statement of law on mitigating and aggravating circumstances."
(Emphasis added.)
The State's comment concerning the appellant's conduct during or immediately after the offense was a proper response to the appellant's presentation of his mental state as a mitigating factor. The appellant's argument is without merit.
 B
The appellant next contends that the State, during its closing arguments in the penalty phase, improperly commented on evidence tending to show that the appellant fled the area after the offense. For the same reasons as addressed in the previous section, this argument is without merit. The State's comment was a response to the appellant's presentation of his mental state as a mitigating factor.
 C
The appellant contends that in the State's closing argument the following comments were improper:
 "[W]hat was Ralph saying when he got hit with that pistol before he got shot? What was Geraldine saying? What was Janice saying?"
The appellant suggests that the State improperly commented on the injuries of Geraldine George. It is clear that the State made no comments whatsoever regarding Geraldine George's injuries. Even if this language could be so construed, it does not rise to the level of plain error. The appellant's argument is without merit.
 D
The last three comments by the State, alleged by the appellant to be improper statements of the role of the jury in deciding whether or not to recommend the death sentence, are:
 "Mr. Rumsey [prosecutor]: Now, ladies and gentlemen, if there is one person in this courtroom that believes in capital punishment, it is that man seated right over there, because in a matter of seconds or minutes, he was the judge, the jury, and the executioner.
". . .
 "I know you will do what you think is just. Just for the [Appellant], Larry Donald George, and just for Ralph Swain and Janice Morris and their family because this man is not the only man that comes in this courtroom seeking justice. The family of Ralph Swain and the family of Janice Morris come to this courtroom seeking justice just as they do.
". . .
 "And capital punishment sounds so hard, so bad, but you know what capital punishment is? Every man and woman in this country believes that if they are at home and a killer is coming in their house to hurt them and their family, they have a right to take that person's life in defense of their family. They have a right to do that, and they have a right under the law. And society has a right to take the worst of the criminals."
These remarks came in the State's rebuttal to the appellant's closing argument during the sentencing phase. In reviewing the State's rebuttal in its entirety, it is clear that the first and last comments were responses to similar remarks made in the appellant's closing argument regarding the justice system and the jury's role in that system.
Relevant portions of the appellant's closing argument during the sentencing phase are:
 "Mr. Giddens [defense counsel]: You have got to make a decision and a recommendation to this Court based on what you have heard.
 "Now, you might have had views of capital punishment when you came in. You *Page 854 
might have had views of capital punishment and punishment in general when you walked in that door right there or that door right there, but when you step in this box right here, those views can be changed forever. Because up until now, I don't believe any of you have ever been called to do this before. Because whatever you believe when you walked in that door is not the same as now, because you have never been asked to go back and vote to recommend the death sentence on anyone.
 "It is easy to sit around in the coffee shop or sit around the dinner table and sit around the job and say, well, I tell you what, I would vote for it if I had a chance. But up until now, you haven't had a chance. So, you have got to put that aside and go with what has been offered in evidence from right here. It is easy to get hung up and say I would do this and I would do this. Well, fortunately, we never have to do those things, but you do. And I told you from the beginning that this may be the highest civic duty that you ever, ever, have to do, and I don't think there will be anything greater ever asked of you than this.
". . . .
 "Time to do the duty to which you swore you would. And if that recommendation is death, if you believe in your hearts and you believe in your heads and you believe what came from this witness stand, you base it on that, then nobody can be mad at you about that or say you didn't do your duty. But if you believe in your hearts and in your minds and in your head and [sic] life without parole, nobody can be mad at you either because that is the duty you swore you would do. Either way, you do what you believe is right and just and nobody can fault you. But do what you believe is right. We won't have a problem with that either way. But like I said before, whatever you believe before is gone because we are here right now. Do it, and there is a difference in what I just said. It's not we. It is you.
 "Do what you believe is right regardless of the outcome, and you have done the duty you swore you would and I know you will."
" 'When the door is opened by defense counsel's argument, it swings wide, and a number of areas barred to prosecutorial comment will suddenly be subject to reply.' DeFoor,Prosecutorial Misconduct in Closing Argument, 7 Nova L.J. 443, 469-70 (1982-83)." Davis v. State, 494 So.2d 851, 855
(Ala.Cr.App. 1986).
In the second comment, the State suggests that it speaks for the victims' families. In Henderson v. State, 583 So.2d 276
(Ala.Cr.App. 1990), aff'd, 583 So.2d 305 (Ala. 1991), cert. denied, 503 U.S. 908, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992), this court held that it was not reversible error for the prosecution to make a brief statement that it spoke on behalf of the victims' families.
In Rutledge v. State, 523 So.2d 1087, 1090-91 (Ala.Cr.App. 1987), rev'd on other grounds, 523 So.2d 1118 (Ala. 1988), this court considered the following comment by the State:
 "Talk about people caring for the defendant, I'm sure that they do. How about people caring for Virginia Holloway, and her son, Gable Holloway's son. Virginia Holloway didn't come in here and testify, and expect you to extend to her sympathy. She doesn't want sympathy for her son, she is just asking for one thing, justice. That's all she's asking for. She knows better than any of us what this case has meant to her and her family; she is just looking for justice, that's all, nothing more."
This court addressed the seriousness of the State's mention of the victims' family:
 "In the instant case, we do not believe that this brief mention of the victim's family was intended by the prosecutor to inject prejudicial or irrelevant material into the sentencing decision, nor do we believe that it had that effect, particularly when considered in the light of the State's long summation as a whole. As we have held, the incidental fact that the victim left a widow and child was properly before the jury. We also view the comments as a way of rebutting the defense argument based on possible sympathy for appellant's family. *Page 855 Brooks v. Kemp [, 762 F.2d 1383 (11th Cir. 1985), cert. denied, 478 U.S. 1022, 106 S.Ct. 3337, 92 L.Ed.2d 742 (1986)]. In addition, the more reasonable interpretation of the argument is that it was a call for justice, not sympathy, and, thus, within the latitude allowed prosecutors in their exhortation to the jury to discharge its duties. Ex parte Waldrop, 459 So.2d 959 (Ala. 1984), cert. denied, 471 U.S. 1030[, 105 S.Ct. 2050, 85 L.Ed.2d 323] (1985). We finally note that there was no timely objection to this portion of the argument. In the absence of a contemporaneous objection, only prosecutorial misconduct that constitutes plain error may require reversal. A.R.A.P. 45A. See also Berger v. United States, 295 U.S. 78[, 55 S.Ct. 629, 79 L.Ed. 1314] (1935). The fact that appellant did not see fit to object to this argument when made weighs against any possible claim of prejudice necessary for plain error. Ex parte Harrell, 470 So.2d 1309 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269[, 88 L.Ed.2d 276] (1985)."
Id. at 1092.
In this case, the State's one sentence comment is not plain error and this court will not reverse the appellant's sentence of death on that ground.
 III
The appellant contends that the trial court's instructions to the jury on aggravating circumstances were misleading and confusing and unlawfully increased the likelihood that the appellant would be sentenced to death. We note that the appellant did not object to the jury instructions at trial. Thus, any error would have to rise to the level of plain error.
The appellant points out that the Alabama Supreme Court, inEx parte Stewart, 659 So.2d 122 (Ala. 1993), reversed a judgment of this trial court for giving similar instructions. We also note that the same prosecutor and at least one of the two defense attorneys in Stewart are also involved in this case.
In Stewart, the Alabama Supreme Court pointed out four specific passages from the trial court's jury instructions that could have possibly confused the jury as to what it could or could not consider as aggravating circumstances:
 "Now, the law provides a list of aggravating circumstances, and the list has eight statutory aggravating circumstances. And there has been argued to you and noted to you and we are concerned with only two out of this list besides any aggravating circumstances you might find from the facts of the case itself. . . .
". . . .
 "Now, the fact that I instruct you on such aggravating circumstances or define them, does not mean that the circumstances or any other aggravating circumstances have been proven beyond a reasonable doubt in this matter, because that is a matter for you to decide under the circumstances. . . .
". . . .
 "You may not consider any aggravating circumstance, other than the circumstance that you have been instructed about. . . .
". . . .
 "A mitigating circumstance does not have to be included in the list that I have read to you in order for it to be considered by you. In addition to the mitigating circumstances enumerated previously and specified, mitigating circumstances shall include any aspect of the defendant's character or record or any of the circumstances of the offense that the defendant offers as a basis for a sentence of life imprisonment without parole instead of death."
Id. at 125-26 (emphasis original).
In this case, the trial court gave the following instructions on aggravating circumstances:
 "The law of this State provides a list of aggravating circumstances that may be considered by a jury in recommending punishment. If the jury is convinced beyond a reasonable doubt from the evidence that one or more of such aggravating circumstances exist in this case, the same definition that I gave to you yesterday in the guilt stage concerning reasonable doubt will apply for this matter also. *Page 856 
". . . .
 "The fact that I instruct you on this aggravating circumstance or define it for you does not mean that this aggravating circumstance has been proved beyond a reasonable doubt in this matter. . . . Whether any aggravating circumstance, which I instruct you on or define for you, has been proved beyond a reasonable doubt based on the evidence in this case is for you, the jury, alone to determine.
". . . .
 "You may not consider any aggravating circumstance other than the aggravating circumstance of which I have instructed you, and you may not consider any aggravating circumstance unless you are convinced by the evidence beyond a reasonable doubt the existence of that aggravating circumstance in this case."
The instruction on the mitigating circumstance was the same as that given in Stewart. However, in Stewart, the Alabama Supreme Court found this particular passage potentially confusing to a jury only when given in conjunction with the instructions given in Stewart on aggravating circumstances. Id.
at 127. By itself, this last instruction is proper and does not pose any potential confusion to the jury.
After a side-by-side comparison of the jury instructions in this case and the instructions in Stewart, it is clear that the trial court's instructions satisfied the concerns of the Alabama Supreme Court.
 IV
The appellant next contends that the trial court improperly charged the jury during the penalty phase by 1) failing to instruct the jury on the narrow and limited purpose for which it could consider the evidence of the appellant's flight from Alabama, and 2) failing to instruct the jury not to consider the injuries of the surviving victim. The appellant did not object at trial to the jury instructions. Thus, any reversal would have to be predicated upon plain error.
 "The 'plain error' rule applies to oral instructions to the jury in capital cases. Ex parte Harrell, 470 So.2d 1309, 1312 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985). In that case, one of the two considerations of the Alabama Supreme Court in refusing to apply the plain error rule to the trial judge's failure to instruct the jury on a particular matter was the fact that '[t]he trial court's instruction follows the pattern jury instruction "recommended" by this Court.' Harrell, 470 So.2d at 1314. '[W]e do not think we should hold that the trial judge plainly erred when he instructed the jury pursuant to a pattern jury instruction "recommended" by this Court, especially in the absence of an objection or request from the defendant.' Harrell, 470 So.2d at 1315."
Kuenzel v. State, 577 So.2d 474, 520 (Ala.Cr.App. 1990), aff'd,577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886,112 S.Ct. 242, 116 L.Ed.2d 197 (1991) (emphasis original).
The trial court's instructions in this case followed the pattern jury instructions as recommended by the Alabama Supreme Court. The appellant did not object at trial to the trial court's instructions. Instead, when asked by the trial court if the instructions were sufficient, the appellant's trial counsel answered "[s]atisfied."
Not only do we not find "plain error," we reject the appellant's contention that "it was incumbent on the trial court to assure that the jury understood the limited purpose for which it could consider this evidence." As discussed in Part II.A. of this opinion, we found no error in the State's presentation of flight evidence. Therefore, no "limiting instruction" by the trial court was necessary.
We also reject the appellant's contention that the trial court should have, and failed to, instruct "the jury that it was only to consider [the appellant's) capital murder conviction and that the trial court would determine sentence on the attempted murder conviction." First, the appellant cites no case law to support this contention. Second, the trial court's instructions to the jury as to what it could and could not consider in sentencing the appellant were clear and conformed with the pattern jury instructions. *Page 857 
 V
The appellant's final contention is that use of the first degree burglary charge, both as an element of capital murder in the guilt phase of the trial and as an aggravating circumstance in the penalty phase of the trial, violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights under the United States Constitution and his rights under Alabama law. This practice is commonly referred to as "double counting" or "overlapping," and is essentially a double jeopardy argument. Because the appellant merely makes bare allegations that his Sixth, Eighth and Fourteenth Amendment rights were violated, we will only address the Fifth Amendment argument.
The appellant did not object at trial to this "double counting." Thus, we must review this issue under the plain error rule.
Section 13A-5-50, Ala. Code 1975, states in relevant part:
 "The fact that a particular capital offense as defined in Section 13A-5-40(a) necessarily includes one or more aggravating circumstances as specified in Section 13A-5-49 shall not be construed to preclude the finding and consideration of that relevant circumstance or circumstances in determining sentence."
Section 13A-5-50 clearly provides that a jury may consider an element of capital murder as an aggravating circumstance if that element is listed in § 13A-5-49. This court has repeatedly held that the use of an element of capital murder as an aggravating circumstance does not punish a defendant twice for the same offense. Burton v. State, 651 So.2d 641 (Ala.Cr.App. 1993), aff'd, 651 So.2d 659 (Ala. 1994), cert. denied,514 U.S. 1115, 115 S.Ct. 1973, 131 L.Ed.2d 862 (1995).
 " 'A capital punishment scheme, under which the same felony may form the basis of an essential element of the crime and an aggravating circumstance for consideration by the jury in recommending a sentence, does not constitute a denial of the guarantee against double jeopardy.' Fortenberry v. State, 545 So.2d 129, 142
(Ala.Cr.App. 1988), aff'd, 545 So.2d 145 (Ala. 1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990)."
Kuenzel v. State, 577 So.2d 474 at 488.
The appellant's argument is without merit.
 VI
Finally, as required by § 13A-5-53, Ala. Code 1975, this court must review the propriety of the appellant's conviction and sentence of death. The appellant was indicted and charged with two counts of murder made capital because the murder was committed during the course of a burglary and because two people were killed as the result of one course of conduct. §§13A-5-40(a)(4) and (10), Ala. Code 1975.
The record reflects that the appellant's death sentence was not the result of the influence of any passion, prejudice, or any other arbitrary factor. § 13A-5-53(b)(1), Ala. Code 1975.
The trial court found that the aggravating circumstance outweighed the mitigating circumstance. The trial court found the aggravating factor was the murder was committed while the appellant was engaged in the commission of, or an attempt to commit, or flight after committing, or attempting to commit a burglary. § 13A-5-49(4). The trial court found the mitigating factor was the appellant had no significant history of prior criminal activity. § 13A-5-51(1). The trial court found no non-statutory mitigating circumstances. The trial court's findings show that it weighed the aggravating circumstance and the mitigating circumstance and correctly sentenced the appellant to death. The trial court's decision is supported by the record, and this court agrees with the trial court's findings.
As required by § 13A-5-53(b)(2), this court must independently weigh the aggravating and mitigating circumstances to determine the propriety of the appellant's sentence of death. We have independently weighed the aggravating and mitigating circumstances and have found the appellant's sentence of death is appropriate in this case.
As required by § 13A-5-53(b)(3), this court must also address whether the appellant's sentence of death is disproportionate to *Page 858 
or excessive when compared to sentences imposed in similar cases. The appellant murdered two people as the result of one course of conduct. Further, he fled the area immediately after committing the murders and the burglary. The appellant's actions both during and after the murders make the application of the death sentence appropriate in this case.
The appellant's sentence of death is not disproportionate to the crime committed. We note that similar crimes are being punished with the death sentence throughout this state. See, e.g. Thomas v. State, 539 So.2d 375 (Ala.Cr.App.), aff'd,539 So.2d 399 (Ala. 1988), cert. denied, 491 U.S. 910,109 S.Ct. 3201, 105 L.Ed.2d 709 (1989); Ford v. State, 515 So.2d 34
(Ala.Cr.App. 1986), aff'd, 515 So.2d 48 (Ala. 1987), cert. denied, 484 U.S. 1079, 108 S.Ct. 1061, 98 L.Ed.2d 1023 (1988);Clisby v. State, 456 So.2d 86 (Ala.Cr.App. 1982), aff'd in part and remanded in part, 456 So.2d 95 (Ala.), remanded,456 So.2d 98 (Ala.Cr.App.), remanded again, 456 So.2d 99 (Ala.Cr.App.), remanded again, 456 So.2d 102 (Ala.Cr.App. 1983), aff'd,456 So.2d 105 (Ala. 1984), cert. denied, 470 U.S. 1009,105 S.Ct. 1372, 84 L.Ed.2d 391 (1985).
Finally, as required by Rule 45A, Ala.R.App.P., we have searched the record and have found no error that would have adversely affected the appellant's substantial rights.
The appellant received a fair trial. The appellant's conviction and sentence of death are affirmed.
AFFIRMED.
All judges concur.